[PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 22-11024

_____

In re: TALAL QAIS ABDULMUNEM AL ZAWAWI,

Debtor in a Foreign Proceeding.

_____

TALAL QAIS ABDULMUNEM AL ZAWAWI,

Plaintiff-Appellant,

*versus*

COLIN DISS,
HANNAH DAVIE,
MICHAEL LEEDS,
Foreign Representatives,

Defendants-Appellees.

———————————————

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 6:21-cv-00894-GAP

———————————————

Before LUCK, LAGOA, and TJOFLAT, Circuit Judges.

LAGOA, Circuit Judge:

Does 11 U.S.C. § 109(a) apply to cases brought under Chapter 15 of the Bankruptcy Code? A lot turns on this question because Chapter 15 purports to "provide effective mechanisms for dealing with cases of cross-border insolvency," 11 U.S.C. § 1501(a), and § 109(a) would significantly restrict the class of persons and entities that could constitute a "debtor" in such cases. The plain text of the Bankruptcy Code provides a clear answer: yes, § 109(a) does apply to Chapter 15 cases. *See* 11 U.S.C. § 103(a) (stating that Chapter 1 applies to cases under Chapter 15). But when confronted with the question of whether debtor eligibility under Chapter 1 was a prerequisite to ancillary assistance under the statutory predecessor to Chapter 15, this Court said no. *See In re Goerg*, 844 F.2d 1562 (11th Cir. 1988). Because we are bound by that decision and understand its reasoning to be sufficiently applicable to the question presented in this case, we are compelled to respond in the same manner today.

After careful review, and with the benefit of oral argument, we affirm the bankruptcy court's determination that, under our

precedent, § 109(a) does not apply to Chapter 15 cases and does not establish a prerequisite for the recognition of a foreign proceeding under § 1517.  We reason as follows.

## I.     FACTUAL AND PROCEDURAL HISTORY

The appellant in this case is Talal Qais Abdulmunem Al Zawawi ("Al Zawawi"), a citizen of Oman.  Al Zawawi owns shares in QAPA Investing Corporation NV ("QAPA"), an entity incorporated in Curacao that wholly owns several Florida entities.  Those Florida entities collectively own around ninety-four million dollars' worth of real estate in or around Winter Park, Florida.

In 2015, Al Zawawi moved to the United Kingdom with his wife, Leila Hammoud, and their children.  In 2017, Hammoud petitioned for dissolution of marriage in the U.K.  As part of that proceeding, Al Zawawi filed a statement of net worth which indicated that, as of April 30, 2017, he owned some assets in the United States.

In March 2019, Hammoud obtained a divorce decree and a judgment in her favor for £24,075,000 from a U.K. court.  On April 2, 2019, the U.K. Court issued a worldwide freezing order against Al Zawawi, enjoining him from disposing of any of his assets until the judgment is paid in full.

About a year later, Hammoud petitioned the U.K. Court to place Al Zawawi in involuntary bankruptcy, alleging that he had failed to make payments on the March 2019 judgment.  On June 29, 2020, Al Zawawi was adjudged bankrupt and, soon after, Colin Diss, Hannah Davie, and Michael Leeds (collectively, the "Foreign

Representatives") were appointed joint trustees in connection with the case.

On March 24, 2021, the Foreign Representatives began the instant action by filing a Chapter 15 Petition for Recognition of a Foreign Proceeding in the U.S. Bankruptcy Court for the Middle District of Florida.

Chapter 15 of the Bankruptcy Code governs ancillary and other cross-border cases. *See* 11 U.S.C. §§ 1501–32. Its stated purpose is to "incorporate the Model Law on Cross-Border Insolvency so as to provide effective mechanisms for dealing with cases of cross-border insolvency with the objectives of": (1) cooperation; (2) "greater legal certainty for trade and investment"; (3) "fair and efficient administration"; (4) "protection and maximization of the value of the debtor's assets"; and (5) "facilitation of the rescue of financially troubled businesses, thereby protecting investment and preserving employment." 11 U.S.C. § 1501(a)(1)–(5).

One of the mechanisms provided by Chapter 15 is recognition of a foreign proceeding. *See* 11 U.S.C. §§ 1515–24. Recognition of a foreign proceeding can subject a debtor's assets located in the United States to the Bankruptcy Code's automatic stay and opens the door for foreign representatives to seek discovery and other relief related to those assets. *See* 11 U.S.C. §§ 1520–21. The requirements for obtaining an order granting recognition are set forth in § 1517.[1]

---

[1] Section 1517 states as follows:

In the memorandum of law accompanying their petition for recognition, the Foreign Representatives argued that all of the

---

(a) Subject to section 1506, after notice and a hearing, an order recognizing a foreign proceeding shall be entered if—

(1) such foreign proceeding for which recognition is sought is a foreign main proceeding or foreign non-main proceeding within the meaning of section 1502;

(2) the foreign representative applying for recognition is a person or body; and

(3) the petition meets the requirements of section 1515.

(b) Such foreign proceeding shall be recognized—

(1) as a foreign main proceeding if it is pending in the country where the debtor has the center of its main interests; or

(2) as a foreign nonmain proceeding if the debtor has an establishment within the meaning of section 1502 in the foreign country where the proceeding is pending.

(c) A petition for recognition of a foreign proceeding shall be decided upon at the earliest possible time. Entry of an order recognizing a foreign proceeding constitutes recognition under this chapter.

(d) The provisions of this subchapter do not prevent modification or termination of recognition if it is shown that the grounds for granting it were fully or partially lacking or have ceased to exist, but in considering such action the court shall give due weight to possible prejudice to parties that have relied upon the order granting recognition. A case under this chapter may be closed in the manner prescribed under section 350.

6                        Opinion of the Court                    22-11024

requirements of § 1517 were met and therefore an order granting
recognition was warranted.

Al Zawawi did not dispute that the requirements of § 1517
had been met but insisted that the petition be denied and the case
dismissed because § 109(a) was not satisfied.[2] Section 109(a) gov-
erns "[w]ho may be a debtor" under title 11, i.e., the Bankruptcy
Code. *See* § 109(a). It states that, "[n]otwithstanding any other pro-
vision of this section, only a person that resides or has a domicile,
a place of business, or property in the United States, or a munici-
pality, may be a debtor under this title."[3] *Id.* Al Zawawi main-
tained that he did not "reside[] or [have] a domicile, a place of busi-
ness, or property in the United States" as of the petition date and,
as a result, could not properly be a debtor under title 11, including
Chapter 15. The Foreign Representatives, meanwhile, rejected the
premise that § 109(a) applies to Chapter 15 cases but argued that,
even if it did, it is satisfied by Al Zawawi's property interests de-
scribed above.

Following briefing and a hearing on the petition for recogni-
tion, the bankruptcy court issued a ruling from the bench in accord-
ance with 11 U.S.C. § 1517(c). *See id.* ("A petition for recognition
of a foreign proceeding shall be decided upon at the earliest

---

[2] Al Zawawi also initially raised an improper venue objection to recognition,
citing 28 U.S.C. § 1410. Al Zawawi has since abandoned that argument.

[3] Chapter 1's actual *definition* of "debtor" is provided in 11 U.S.C. § 101(13),
which states that "[t]he term 'debtor' means person or municipality concern-
ing which a case under this title has been commenced."

possible time."). The bankruptcy court granted the petition for recognition and, in doing so, determined that § 109(a) does not apply to Chapter 15 cases. The bankruptcy court further determined that, even if § 109(a) did apply to such cases, the Foreign Representatives sufficiently showed that Al Zawawi had property interests in the United States. The bankruptcy court also provided notice that, given the expedited nature of its ruling, it may issue "a supplemental opinion later."

The bankruptcy court subsequently entered a written order in which it granted the recognition request, recognized the automatic stay, and prohibited the transfer, encumbrance, and disposal of Al Zawawi's assets pursuant to 11 U.S.C. §§ 1520–21. Similar to its bench ruling, the bankruptcy court's written order noted that it "may render a supplemental decision to expand on [its] holding."

Al Zawawi timely appealed the bankruptcy court's order granting recognition to the district court. While that appeal was pending and as contemplated by the initial written order, the bankruptcy court issued a supplemental opinion that expanded upon the ruling offered at the hearing and more thoroughly engaged with the arguments presented.

Following the bankruptcy court's supplemental opinion, the parties filed their appellate briefs with the district court. The district court ultimately affirmed the bankruptcy court's order granting recognition on the basis that § 109(a) does not apply to Chapter 15 cases. The district court did not address the bankruptcy court's alternative determination that Al Zawawi satisfies § 109(a) due to

his property interests in the United States.  A corresponding judgment was entered the next day.

Al Zawawi then timely appealed to this Court.

## II.    STANDARDS OF REVIEW

"In bankruptcy appeals, we act as a second court of review, independently examining the decisions of the [b]ankruptcy [c]ourt and applying the same standards as the [d]istrict [c]ourt." *In re Nica Holdings, Inc.*, 810 F.3d 781, 785–86 (11th Cir. 2015).  We therefore consider the bankruptcy court's decision directly, reviewing findings of fact for clear error and legal conclusions *de novo*.  *Id.* at 786. For their part, jurisdictional issues are reviewed *de novo*.  *In re Donovan*, 532 F.3d 1134, 1136 (11th Cir. 2008).

## III.    ANALYSIS

As previewed, the central issue on appeal is whether § 109(a) applies to Chapter 15 cases and imposes a prerequisite for the recognition of a foreign proceeding.  Before addressing that issue, however, we first must determine whether we have jurisdiction to hear this appeal.  *See Ray v. Edwards*, 725 F.2d 655, 658 n.3 (11th Cir. 1984) ("This court has a duty to review its jurisdiction of an appeal, *sua sponte* at any point in the appellate process.").

### A.    Jurisdiction

In general, this Court "has jurisdiction over only final judgments and orders," *In re F.D.R. Hickory House, Inc.*, 60 F.3d 724, 725 (11th Cir. 1995) (citing 28 U.S.C. § 158(d)), and a judgment or order is considered "final" only if it "ends the litigation on the merits and

leaves nothing for the court to do but execute the judgment," *Catlin v. United States*, 324 U.S. 229, 233 (1945). In the bankruptcy context, however, a judgment or order is considered "final" as long as it resolves a "proceeding"—even if it does not resolve the entire case. *See Ritzen Grp., Inc. v. Jackson Masonry, LLC*, 140 S. Ct. 582, 586–87 (2020); *In re Charter Co.*, 778 F.2d 617, 621 (11th Cir. 1985). This is because bankruptcy cases often "encompass[] numerous 'individual controversies, . . . which would exist as stand-alone lawsuits but for the bankrupt status of the debtor,'" and which are "linked, one dependent on the outcome of another." *Ritzen*, 140 S. Ct. at 586–87 (quoting *Bullard v. Blue Hills Bank*, 575 U.S. 496, 501 (2015)). Delaying appeal of a decision that resolves a discrete controversy early on in a bankruptcy case therefore carries a risk of substantial inefficiency in the event of a reversal, i.e., the bankruptcy court could have to "un-ravel" several subsequent adjudications "rendered in reliance on [the] earlier decision." *Id.* at 587.

Thus, conducting a finality analysis in the bankruptcy context naturally involves a tricky task of "considerable importance": correctly delineating the dimensions of a bankruptcy "proceeding." *Id.* Fortunately, the Supreme Court recently offered guidance on how to navigate these waters in *Ritzen*, where it held that the adjudication of a stay-relief motion in the bankruptcy context constitutes its own "proceeding" for finality purposes. *Id.* at 587–92. In reaching that conclusion, the Supreme Court identified two important features of the adjudication of a stay-relief motion: (1) it involves "a discrete procedural sequence, including notice and a

hearing," as set forth by statute, and (2) it "occurs before and apart from the proceedings on the merits of creditors' claims." *Id.* at 589.

In this case, we must determine whether an order granting recognition of a foreign proceeding resolves a discrete bankruptcy "proceeding." Both sides argue that such an order does resolve a "proceeding" and is thus considered "final" under the *Ritzen* framework. We agree.

Like motions to stay relief, petitions for recognition trigger "a discrete procedural sequence" that includes "notice and a hearing." *See* 11 U.S.C. § 1517(a). And although the adjudication of a petition for recognition does not occur "before" the proceedings on the merits, i.e., the foreign proceeding, it occurs "apart" from those proceedings in the sense that it introduces for the first time and fully occurs in a new legal system, i.e., the federal courts of the United States. Moreover, in cases like this one, the entire Chapter 15 action rests on the initial decision to recognize a foreign proceeding. Thus, in such cases, delaying appeal of orders granting recognition presents precisely the kind of risk to judicial economy highlighted by the Supreme Court. *See Ritzen*, 140 S. Ct. at 587 ("Reversal of a decision made early on could require the bankruptcy court to unravel later adjudications rendered in reliance on an earlier decision."). Lastly, the adjudication of a petition for recognition is not a "dispute[] over minor details about how a bankruptcy case will unfold"—it is what determines whether the parties to a foreign proceeding will have access to the judicial resources and power of the United States. *Id.* at 590. That access can have

significant implications for enormous amounts of property held in the United States and abroad.  For all of these reasons, we are satisfied that an order granting recognition of a foreign proceeding constitutes a final order under the *Ritzen* framework.  Thus, the order granting recognition in this case is subject to our jurisdiction under 28 U.S.C. § 158(d).

## B.      The Merits

Having determined that we have jurisdiction over this appeal, we turn now to the central issue presented: whether § 109(a) applies to Chapter 15 cases and imposes a prerequisite for the recognition of a foreign proceeding.

A plain reading of the Bankruptcy Code—specifically § 103(a)—indicates that § 109(a) *does* apply to Chapter 15 cases. Section 103 governs the "[a]pplicability of [the] chapters" of title 11, and subsection (a) states as follows: "Except as provided in section 1161 of this title, chapters 1, 3, and 5 of this title apply in a case under chapter 7, 11, 12, or 13 of this title, *and this chapter, sections 307, 362(o), 555 through 557, and 559 through 562 apply in a case under chapter 15*."  11 U.S.C. § 103(a) (emphasis added).  "[T]his chapter," as used above in § 103(a) of Chapter 1 of title 11, refers to Chapter 1.[4]  And unlike Chapters 3 and 5, for which § 103(a) identifies the particular sections that apply to Chapter 15 cases, Chapter 1 is referenced as a whole, without any indication that certain sections are

---

[4] The sections of title 11 are numbered in accordance with the chapter in which they are included.  For instance, § 103 is part of chapter 1, § 307 is part of chapter 3, and § 555 is part of chapter 5.

excluded from application to Chapter 15.  Moreover, nothing in 11 U.S.C. § 1161—the section cited in the subordinating clause at the start of § 103(a)—limits the application of Chapter 1 to cases under Chapter 15.  Accordingly, § 103(a) plainly provides that the entirety of Chapter 1 applies to cases under Chapter 15.  It therefore necessarily follows that § 109(a), as a part of Chapter 1, applies to cases under Chapter 15.

The Second Circuit correctly described this interpretation of § 103(a) as "straightforward." *In re Barnet*, 737 F.3d 238, 247 (2d Cir. 2013).  In fact, the Second Circuit addressed the same question on appeal here and concluded that the plain reading of § 103(a) controls.  *Id.* at 246–51.

But we are differently situated from the Second Circuit in that we are bound by prior precedent that states that Chapter 1's debtor eligibility language does not apply to cases ancillary to a foreign proceeding.  *See In re Goerg*, 844 F.2d 1562 (11th Cir. 1988); *see also Generali v. D'Amico*, 766 F.2d 485, 489 (11th Cir. 1985) ("This Court is bound by the case law of the Eleventh Circuit . . . .").  In *Goerg*, this Court dealt with the question of whether the would-be debtor in a case brought under the former § 304[5]—the predecessor

---

[5] The former 11 U.S.C. § 304 was titled "[c]ases ancillary to foreign proceedings" and read as follows:

> (a) A case ancillary to a foreign proceeding is commenced by the filing with the bankruptcy court of a petition under this section by a foreign representative.

(b) Subject to the provisions of subsection (c) of this section, if a party in interest does not timely controvert the petition, or after trial, the court may—

(1) enjoin the commencement or continuation of—

(A) any action against—

(i) a debtor with respect to property involved in such foreign proceeding; or

(ii) such property; or

(B) the enforcement of any judgment against the debtor with respect to such property, or any act or the commencement or continuation of any judicial proceeding to create or enforce a lien against the property of such estate;

(2) order turnover of the property of such estate, or the proceeds of such property, to such foreign representative; or

(3) order other appropriate relief.

(c) In determining whether to grant relief under subsection (b) of this section, the court shall be guided by what will best assure an economical and expeditious administration of such estate, consistent with—

(1) just treatment of all holders of claims against or interests in such estate;

(2) protection of claim holders in the United States against prejudice and inconvenience in the processing of claims in such foreign proceeding;

(3) prevention of preferential or fraudulent dispositions of property of such estate;

(4) distribution of proceeds of such estate substantially in accordance with the order prescribed by this title;

14                    Opinion of the Court                    22-11024

to Chapter 15—must fall within Chapter 1's definition of a "debtor," and this Court ultimately said no.  844 F.2d at 1566–68.

In reaching that answer, this Court first identified a point of tension between § 101's definitions of "debtor" and "foreign proceeding."  *Id.* at 1566–67.  The term "debtor" was defined, at the time, in the same way that it is defined today: to mean a "person or municipality concerning which a case under this title has been commenced."  *Compare* 11 U.S.C. § 101(12) (1982), *with* 11 U.S.C. § 101(13).  The term "foreign proceeding," meanwhile, was defined as follows:

> [A] proceeding whether judicial or administrative and whether or not under bankruptcy law, in a foreign country in which the debtor's domicile, residence, principal place of business, or principal assets were located at the commencement of such proceeding, for the purpose of liquidating an estate, adjusting debts by composition, extension, or discharge, or effecting a reorganization.

11 U.S.C. § 101(22) (Supp. IV 1986).  Thus, as this Court highlighted, those two definitions presented the following "anomaly":

> [A]lthough the inclusion of the term "debtor" in the definition of "foreign proceeding" suggests that the subject of the foreign proceeding must qualify as a

_____

(5) comity; and

(6) if appropriate, the provision of an opportunity for a fresh start for the individual that such foreign proceeding concerns.

"debtor" under United States bankruptcy law, the
[Bankruptcy] Code expressly provides that the for-
eign proceeding need not even be a bankruptcy pro-
ceeding, either under foreign or United States law.

*Goerg*, 844 F.2d at 1566–67.

This Court then identified two possible ways to resolve that anomaly:

First, we could adopt the position . . . that the [Bank-
ruptcy] Code's narrow definition of "debtor" con-
trols, notwithstanding the otherwise expansive defi-
nition of "foreign proceeding." Alternatively, we
could adopt the view that the term "debtor" as used
in the section 304 context incorporates the definition
of "debtor" used by the forum in which the foreign
proceeding is pending. Under this alternative view,
the bankruptcy court has jurisdiction to entertain the
section 304 petition provided that the debtor qualifies
for relief under applicable foreign law, and provided
further that the foreign proceeding to which the
debtor is subject is "for the purpose of liquidating an
estate, adjusting debts by composition, extension, or
discharge, or effecting a reorganization."

*Id.* at 1567.

In deciding between those two options, this Court relied on the "purpose" of § 304 to break the tie. *Id.* at 1567–68. This Court identified § 304's purpose as being "to 'prevent dismemberment by local creditors' of assets located in this country that are involved in a foreign insolvency proceeding" and, more generally, "to help

further the efficiency of foreign insolvency proceedings involving worldwide assets." *Id.* at 1568 (quoting H.R. Rep. No. 95-595, at 324 (1977)). In light of that understanding of § 304's purpose, this Court concluded that "it would make little sense to require that the subject of the foreign proceeding qualify as a 'debtor' under United States bankruptcy law," and that instead it "would make eminent sense for Congress to define expansively the class of foreign insolvency proceedings for which ancillary assistance is available." *Id.*

Accordingly, in the end, this Court chose the second option for resolving the described tension and held that the debtor in an ancillary assistance case under § 304 "need only be properly subject" to a "foreign proceeding" as defined in the Bankruptcy Code. *Id.* at 1568. In other words, this Court determined that "'debtor' eligibility under the [Bankruptcy] Code" was not "a prerequisite to section 304 ancillary assistance." *Id.*

As relevant here, the Bankruptcy Code's current definitions of "debtor" and "foreign proceeding" present an "anomaly" for Chapter 15 that is similar to the one identified and resolved in *Goerg*. This is so because: (1) like the former § 304, Chapter 15 concerns ancillary assistance for "foreign proceedings" and (2) since *Goerg*, the definition of "debtor" has remained the same[6] and the definition of "foreign proceeding" has changed only somewhat.[7]

---

[6] *Compare* 11 U.S.C. § 101(12) (1982), *with* 11 U.S.C. § 101(13).

[7] At the time *Goerg* was decided, Chapter 1 defined "foreign proceeding" to mean:

22-11024                Opinion of the Court                17

Our decision in *Goerg* therefore counsels us to consider the purpose of Chapter 15 in resolving this definitional anomaly and suggests that, if the purpose of Chapter 15 sufficiently tracks that of the former § 304, we should reach the same outcome.

Given the inescapable indeterminacy of a purposive approach to statutory interpretation,[8] it is impossible to confidently

---

> [a] proceeding, whether judicial or administrative and whether or not under bankruptcy law, in a foreign country in which the debtor's domicile, residence, principal place of business, or principal assets were located at the commencement of such proceeding, for the purpose of liquidating an estate, adjusting debts by composition, extension, or discharge, or effecting a reorganization.

11 U.S.C. § 101(22) (Supp. IV 1986). Today, Chapter 1 defines "foreign proceeding" to mean:

> a collective judicial or administrative proceeding in a foreign country, including an interim proceeding, under a law relating to insolvency or adjustment of debt in which proceeding the assets and affairs of the debtor are subject to control or supervision by a foreign court, for the purpose of reorganization or liquidation.

11 U.S.C. § 101(23). Thus, both definitions of "foreign proceeding" include the term "debtor" but are not strictly limited to bankruptcy proceedings.

[8] *See* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 18–19 (2012) ("The most destructive (and most alluring) feature of purposivism is its manipulability. Any provision of law . . . can be said to have a number of purposes, which can be placed on a ladder of abstraction. . . . The purposivist, who derives the meaning of text from purpose and not purpose from the meaning of text, is free to climb up this ladder of purposes and to 'fill in' or change the text according to the level of generality he has chosen.").

determine the degree to which *Goerg*'s understanding of the purpose of the former § 304 can be grafted onto Chapter 15. Every statute is a compromise of multiple interests,[9] and the purpose of any given statute is shaped by both what the statute says and does not say. *See* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Texts* 21 (2012) ("[L]imiting provisions (or the absence of more expansive provisions) are no less a reflection of the genuine 'purpose' of [a] statute than the operative provisions, and it is not the court's function to alter the legislative compromise."). Moreover, the meaning—and therefore the purpose—of any particular statutory language is necessarily shaped by its surrounding statutory context. *See id.* § 24, at 167 ("[T]he whole-text canon . . . calls on the judicial interpreter to consider the entire text, in view of its structure and of the physical and logical relation of its many parts. . . . Context is a primary determinant of meaning."); *see also id.* § 39, at 252–53 ("Part of [a] statute's context is the *corpus juris* of which it forms a part . . . ."). These principles play out in immeasurable ways through the many differences between the former § 304 and Chapter 15. For instance, the former § 304 did not entitle debtors to the automatic stay, as we highlighted in *Goerg*,[10] whereas

---

[9] *See Arangure v. Whitaker*, 911 F.3d 333, 345 (6th Cir. 2018) ("[S]tatutes are motivated by *many* competing—and often contradictory—purposes. Congress addresses these purposes by negotiating, crafting, and enacting statutory text. It is that text that controls, not a court's after-the-fact reevaluation of the purposes behind it.").

[10] *See Goerg*, 844 F.2d at 1568 ("That the section 304 debtor is denied [the benefit of the automatic stay] strongly suggests that Congress did not intend that

Chapter 15 establishes that the automatic stay applies upon the recognition of a foreign main proceeding. *See* 11 U.S.C. § 1520(a)(1). Further, the former § 304 was shaped by a version of Chapter 1 that did not contain an equivalent of § 109(a)'s restriction on who may constitute a debtor or of § 103(a)'s indication that all of Chapter 1 applies to cases ancillary to a foreign proceeding, whereas Chapter 15 is shaped by a version of Chapter 1 that obviously does contain those sections.[11] *See id.* §§ 103(a), 109(a).

Despite these differences, however, we believe that the former § 304 and Chapter 15 are sufficiently similar in terms of their purposes such that our decision in *Goerg* controls our analysis in this case. One of the main aims of Chapter 15, according to the Chapter's own "purpose" clause, is to "provide effective mechanisms for dealing with cases of cross-border insolvency." 11 U.S.C. § 1501(a). In *Goerg*, this Court interpreted the former § 304 as having the same purpose. 844 F.2d at 1568. And, based on that purpose, this Court interpreted the definition of "foreign proceeding" and determined that a debtor in a case ancillary to a foreign

---

'debtor' eligibility under the [Bankruptcy] Code be a prerequisite to section 304 ancillary assistance.").

[11] Another difference between the former § 304 and Chapter 15 is that Chapter 15 provides its own definition of the term "debtor"—which is nearly identical to the definition used in *Goerg*—whereas § 304 did not. *See* 11 U.S.C. § 1502(1) (defining "debtor," for purposes of Chapter 15, to mean "an entity that is the subject of a foreign proceeding"). Unlike the other differences highlighted herein, this difference seems to support applying *Goerg*'s reasoning to Chapter 15. *But see Barnet*, 737 F.3d at 249 (reasoning that § 1502(1) supplants § 101(13) but not § 109(a)).

proceeding "need only be properly subject, under applicable foreign law," to a "foreign proceeding" as defined in the Bankruptcy Code. *Id.* Given the similarities of the definitions of "foreign proceedings" in both Chapter 15 and the former § 304—e.g., both definitions require a "debtor"—and wary of slicing our binding precedent too thin, we follow the logic of *Goerg* and hold that, based on the definition of "foreign proceeding" in § 101(12), as informed by the purpose of Chapter 15, debtor eligibility under Chapter 1 is not a prerequisite for the recognition of a foreign proceeding under Chapter 15. With § 109(a) therefore out of the picture, no dispute remains. Al Zawawi is properly subject to a "foreign proceeding," and the requirements for recognition listed in § 1517 are met.

## IV.　CONCLUSION

Accordingly, we affirm the bankruptcy court's order granting recognition.

**AFFIRMED.**

22-11024         LAGOA, J., Specially Concurring         1

LAGOA, Circuit Judge, Circuit Judge, Specially Concurring:

For the reasons discussed in the majority opinion, I agree that *Goerg* compels the result reached by the majority opinion. But if we were writing on a clean slate, I would reverse the bankruptcy court's determination that 11 U.S.C. § 109(a) does not apply to Chapter 15 cases in accordance with the plain text of 11 U.S.C. § 103(a). *See* Maj. Op. at 12–13. I write separately to address the Foreign Representatives' four main arguments supporting the application of *Goerg* and why I do not believe they are supported by the text of the Bankruptcy Code.

The Foreign Representatives' first argument for why § 109(a) does not impose a prerequisite for recognition is rooted in the language of 11 U.S.C. § 1517(a). Section 1517(a) lists requirements for recognition, including the implied requirement that there be proper notice and a hearing, and states that, if those requirements are met, an order granting recognition "*shall* be entered." (Emphasis added). The Foreign Representatives contend that the use of "shall" indicates that § 1517(a) sets forth an exhaustive list of requirements for recognition and, so the argument goes, the absence of any reference in § 1517(a) to § 109(a) indicates that satisfying § 109(a) is not a prerequisite for recognition.

The problem with this argument is it overlooks that debtor eligibility is baked into the requirements of § 1517(a). The requirements of § 1517(a) expressly contemplate and impliedly depend on the existence of some related "foreign proceeding," *see* 11 U.S.C. § 1517(a)(1)–(3), and the Bankruptcy Code's definition of "foreign

proceeding" similarly expressly contemplates and impliedly depends on the existence of some related "debtor," *see id*. § 101(23). That is where § 109(a) comes into play: it describes "[w]ho may be a debtor." Thus, when read plainly and together with Chapter 1, the requirements of § 1517(a) themselves require satisfaction of § 109(a), even though § 1517(a) alone does not spell that out.

The Foreign Representatives' second argument purports to highlight an irreconcilable conflict between § 109(a) and 11 U.S.C. § 1502. Section 1502 defines a list of terms "for purposes of [Chapter 15]," and subsection (1) defines the term "debtor" to mean "an entity that is the subject of a foreign proceeding." 11 U.S.C. § 1502(1). The Foreign Representatives contend that § 1502(1)'s use of the broad term "entity" conflicts with § 109(a), which limits debtors under title 11 to "person[s] that reside[] or [have] a domicile, a place of business, or property in the United States" and "municipalit[ies]." *See id*. § 101(15) (defining "entity" to include "person[s], estate[s], trust[s], governmental unit[s], and United States trustee[s]"). Specifically, the Foreign Representatives highlight that § 1502(1) seemingly allows for estates, trusts, and certain government units to be debtors whereas § 109(a) appears to categorically exclude them from being such. Even so, the supposed debtor in this case is a person, not an estate, trust, or government unit. And, with respect to persons, § 1502(1) neither contains its own, contrary residency/property requirement, nor clearly spurns the possibility of any such requirement. Thus, as far as this case is concerned, § 1502(1) and § 109(a) can easily be read in harmony: § 1502(1) recognizes that persons can be debtors in Chapter 15

22-11024          LAGOA, J., Specially Concurring          3

cases, and § 109(a) imposes a residency/property requirement that must be satisfied for a person to be qualify as a debtor. *See* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Texts* § 27, at 180 (2012) ("The provisions of a text should be interpreted in a way that renders them compatible, not contradictory.").

The Foreign Representatives' third argument is that applying § 109(a) to cases under Chapter 15 would render part of 11 U.S.C. § 1528 superfluous. Section 1528 states, in pertinent part, that "[a]fter recognition of a foreign main proceeding, a case under another chapter of this title may be commenced *only if the debtor has assets in the United States.*" (Emphasis added). The Foreign Representatives contend that § 1528's asset requirement has no effect if § 109(a) already independently requires that the debtor be either (1) a person who "resides or has a domicile, a place of business, or property in the United States" or (2) a municipality. *See* 11 U.S.C. § 109(a). But this argument rests on the faulty assumption that any debtor who satisfies § 109(a) necessarily "has assets in the United States." As noted during oral argument in this case, it is possible that an individual debtor might reside in the United States without personally owning any assets in the country—for example, he may rely exclusively on assets held abroad or owned by a trust. It likewise is possible that a municipal debtor might not itself own any assets at all. *See* 11 U.S.C. § 101(40). Thus, there are potential cases where a debtor satisfies § 109(a) but not § 1528's asset requirement. In such cases, if a foreign main proceeding has been recognized, § 1528's asset requirement certainly has an effect: it prohibits the commencement of a case under any other Chapter of title 11.

The Foreign Representatives' fourth argument is that applying § 109(a) to cases under Chapter 15 would render parts of 28 U.S.C. § 1410 superfluous. Section 1410 is the venue statute for Chapter 15 cases and provides:

> A case under chapter 15 of title 11 may be commenced in the district court of the United States for the district—

> (1) in which the debtor has its principal place of business or principal assets in the United States;

> (2) if the debtor does not have a place of business or assets in the United States, in which there is pending against the debtor an action or proceeding in a Federal or State court; or

> (3) in a case other than those specified in paragraph (1) or (2), in which venue will be consistent with the interests of justice and the convenience of the parties, having regard to the relief sought by the foreign representative.

The Foreign Representatives argue that, if § 109(a) applies to cases under Chapter 15, every debtor who satisfies § 109(a) necessarily will have a "principal place of business or principal assets in the United States" and therefore satisfy § 1410(1), rendering subsections (2) and (3) meaningless in all cases. Like the Foreign Representatives' § 1528 argument, this argument rests on a faulty assumption. It is entirely possible that a Chapter 15 debtor might satisfy § 109(a) through residence or domicile in the United States but not have a principal place of business or principal property in

22-11024            LAGOA, J., Specially Concurring            5

the United States and therefore not satisfy § 1410(1). In such cases, § 1410(2) and (3) would come into play and determine where venue lies.

★ ★ ★ ★

In sum, § 103(a) plainly provides that § 109(a) applies to cases under Chapter 15, and I do not find any of the Foreign Representatives' counterarguments based on the text of the Bankruptcy Code to be persuasive. Regardless, this Court's reasoning in *Goerg* suggests that § 109(a) does not apply to cases ancillary to a foreign proceeding, and we are bound by that precedent. "Under the prior precedent rule, we are bound to follow a prior binding precedent 'unless and until it is overruled by this court en banc or by the Supreme Court.'" *See United States v. Vega-Castillo*, 540 F.3d 1235, 1236 (11th Cir. 2008) (quoting *United States v. Brown*, 342 F.3d 1245, 1246 (11th Cir. 2003)). But if we were not so bound, I would adhere to the plain meaning of § 103(a) and reverse the bankruptcy court's determination that § 109(a) does not apply to Chapter 15 cases.

22-11024        TJOFLAT, J., Specially Concurring        1

TJOFLAT, Circuit Judge, Specially Concurring:

I agree with the majority that we are bound by *In re Goerg*, 844 F.2d 1562 (11th Cir. 1988), where we held that debtor eligibility under the then-applicable bankruptcy code did not limit recognition of foreign proceedings. But I write separately because I respectfully disagree with the majority's interpretation of *In re Goerg* as abstract purposivism. Rather, I believe we are bound by *In re Goerg* because the current definition of a foreign proceeding[1] is substantially the same as the one we soundly interpreted in *In re Goerg*,[2] and whether a court can recognize a foreign proceeding depends

---

[1] The current definition of "foreign proceeding" provides, in full:

> The term "foreign proceeding" means a collective judicial or administrative proceeding in a foreign country, including an interim proceeding, under a law relating to insolvency or adjustment of debt in which proceeding the assets and affairs of the debtor are subject to control or supervision by a foreign court, for the purpose of reorganization or liquidation.

11 U.S.C. § 101(23).

[2] The definition of "foreign proceeding" we interpreted in *In re Goerg* provided, in full:

> "[F]oreign proceeding" means proceeding, whether judicial or administrative and whether or not under bankruptcy law, in a foreign country in which the debtor's domicile, residence, principal place of business, or principal assets were located at the commencement of such proceeding, for the purpose of liquidating an estate, adjusting debts by composition, extension, or discharge, or effecting a reorganization.

844 F.2d at 1565 (quoting 11 U.S.C. § 101(22) (1982)).

2                  TJOFLAT, J., Specially Concurring             22-11024

on whether the proceeding meets that definition.  In any event, the current statute contains additional support for the conclusion that American courts can recognize foreign proceedings regardless of whether the debtor subject to the foreign proceeding is eligible to commence a United States bankruptcy proceeding.

In Part I of this special concurrence, I discuss Title 11 of the United States Code (the "Bankruptcy Code").  I cover the basics of how American bankruptcy proceedings work in Part I.A., and how they contrast with ancillary proceedings in Part I.B.  In Part II.A., I discuss our interpretation of "foreign proceeding" in *In re Goerg*.  In Part II.B., I explain why the current definition of "foreign proceeding" is materially the same as the one we interpreted in *In re Goerg*, showing why we are bound by that case.

In Part II.C., I discuss how § 1502's definition of "debtor" for the purposes of Chapter 15 is broader than § 109(a)'s limit on "who may be a debtor."[3]  Section 1502(1)[4] covers foreign proceedings involving "entit[ies]," while § 109(a) only includes "person[s]."  *See* 1 Collier on Bankruptcy ¶ 1.01[2][a] ("A 'person' may be eligible for relief under the Code by virtue of section 109, but one who is an 'entity' and not a 'person'"—such as a probate estate, *In re Goerg*, 844 F.2d at 1565–66—"would not be eligible.").  I also emphasize

---

[3] Section 109(a) says: "Notwithstanding any other provision of this section, only a person that resides or has a domicile, a place of business, or property in the United States, or a municipality, may be a debtor under this title."

[4] Section 1502(1) says: "'debtor' means an entity that is the subject of a foreign proceeding."

22-11024          TJOFLAT, J., Specially Concurring          3

that Chapter 15 incorporates the UNCITRAL[5] *Model Law on Cross-Border Insolvency* (1997) (the "Model Law"). *See* § 1501(a) ("The purpose of this chapter is to incorporate the Model Law on Cross-Border Insolvency so as to provide effective mechanisms for dealing with cases of cross-border insolvency."). And interpreting Chapter 15 in light of its "international origin"—as § 1508[6] requires—confirms that domestic debtor eligibility under § 109(a) is not relevant to recognizing a foreign proceeding under Chapter 15. The Guide Enactment and Interpretation of the UNCITRAL Model Law on Cross-Border Insolvency (the "Enactment Guide") UNCITRAL issued alongside the Model Law says so directly.[7] I then discuss the proceedings in this case, which illustrate why applying debtor eligibility under § 109(a) to recognition of foreign proceedings

---

[5] United Nations Commission on International Trade Law ("UNCITRAL").

[6] Section 1508 mandates that, "[i]n interpreting this chapter, the court *shall* consider its international origin, and the need to promote an application of this chapter that is consistent with the application of similar statutes adopted by foreign jurisdictions."

[7] UNCITRAL, *Guide to Enactment and Interpretation of the UNCITRAL Model Law on Cross-Border Insolvency*, ¶ 55 (2013), *available at* https://uncitral.un.org/sites/uncitral.un.org/files/media-documents/uncitral/en/1997-model-law-insol-2013-guide-enactment-e.pdf. The Guide was updated in 2013 to help clarify the concept of a "center of main interests" in describing a foreign main proceeding. ¶ 18. Paragraph 55 in the 2013 version of the Guide appeared as ¶ 60 in the 1997 version. UNCITRAL Table of Concordance: Guide to Enactment (1997)—Guide to Enactment and Interpretation (2013), *available at* https://uncitral.un.org/sites/uncitral.un.org/files/media-documents/uncitral/en/table_of_concordance-1997-2013-guide-enactment.pdf.

encourages fraudulent transfers.  That flies in the face of what one would expect given the statute's history and purposes.

### I.

### A.

"The principal purpose of the Bankruptcy Code is to grant a fresh start to the honest but unfortunate debtor." *Marrama v. Citizens Bank of Massachusetts*, 549 U.S. 365, 367, 127 S. Ct. 1105, 1107 (2007) (internal quotation marks omitted).  In bankruptcy, "through orderly and centralized liquidation or through reorganization or rehabilitation, creditors of equal priority receive ratable and equitable distributions designed to serve 'the prime bankruptcy policy of equality of distribution among creditors of the debtor.'" 1 Collier on Bankruptcy ¶ 1.01[1] (16th ed. 2023) (quoting *Union Bank v. Wolas*, 502 U.S. 151, 161, 112 S. Ct. 527, 533 (1991) (quoting H.R. Rep. No. 95-595 at 177–78 (1977)).  The goal is to settle the debtor's obligations using the assets he has left before the remaining obligations are discharged.  Discharge then enables "the debtor to begin a new financial life." 1 Collier on Bankruptcy, ¶ 1.02 [1] (16th ed. 2023).

The bankruptcy process requires collecting the debtor's assets into a bankruptcy "estate" created under 11 U.S.C. § 541 "that comprises all of the debtor's interests, legal and equitable, in property wherever located and by whomever held . . . . at the date of the filing of the petition." 1 Collier on Bankruptcy ¶ 1.03[1] (16th

22-11024          TJOFLAT, J., Specially Concurring          5

ed. 2023). A representative of that estate, the trustee,[8] then lines up the debtor's creditors by priority to decide which can obtain some or all of what the debtor owes them. *See* 1 Collier on Bankruptcy ¶ 1.03[2]–[4] (16th ed. 2023). "In liquidation, this equates to a pro-rata distribution of the debtor's nonexempt assets to creditors; in reorganization, the debtor must pay creditors at least this liquidation amount as a condition of reorganization or rehabilitation." *Id.* at ¶ 1.03[1].

Under the Bankruptcy Code, an individual or business can seek the discharge or restructuring of debts by filing a "voluntary" bankruptcy petition. 1 Collier on Bankruptcy ¶ 1.01[1], ¶ 1.04[1] (16th ed. 2023). The bankruptcy estate is created under § 541 upon the filing of a petition. 1 Collier on Bankruptcy ¶ 1.03[1] (16th ed. 2023). "A voluntary petition automatically constitutes an order for relief," and "[t]here are no specific allegations that are required for the voluntary petition." *Id.* at ¶ 1.04[1] (citing 11 U.S.C. § 301).[9]

---

[8] Under Chapter 7, 11, 12, and 13 proceedings, a trustee is appointed to represent the estate. In Chapter 9 proceedings, which concern municipalities, the bankruptcy court cannot operate the city's affairs or, except for limited purposes specified in § 926(a), appoint a trustee. *See* 1 Collier on Bankruptcy ¶ 1.07[2] (16th ed. 2023) (citing § 903 and the Tenth Amendment). I focus on bankruptcy proceedings for individuals and businesses.

[9] Section 301 says, in full:

> (a) A voluntary case under a chapter of this title is commenced by the filing with the bankruptcy court of a petition under such chapter by an entity that may be a debtor under such chapter.

6                 TJOFLAT, J., Specially Concurring           22-11024

But under § 301, the petitioner must "identify[] the chapter of the Code pursuant to which relief is requested," and "[t]he petitioner must qualify as a 'debtor' under the selected chapter." 2 Collier on Bankruptcy ¶ 301.01 (16th ed. 2023).

Section 109 of the Bankruptcy Code lays out who is eligible to "be a debtor" for the purposes of different types of bankruptcy proceedings. Section 109(a) creates a minimum threshold. It provides: "Notwithstanding any other provision of this section, only a person that resides or has a domicile, a place of business, or property in the United States, or a municipality, may be a debtor under this title." § 109(a). That tracks § 101(13)'s definition of debtor, "a person or municipality concerning which a case under this title has been commenced." Then, § 109(b) covers eligibility for Chapter 7 (Liquidation); § 109(c) covers eligibility for Chapter 9 (Adjustment of Debts of a Municipality); § 109(d) covers eligibility for Chapter 11 (Reorganization); § 109(f) covers eligibility for Chapter 12 (Adjustment of Debts of a Family Farmer or Fisherman with Regular Income); and § 109(e) covers eligibility for Chapter 13 (Adjustment of Debts of an Individual with Regular Income). Section 109 does not discuss Chapter 15 or foreign proceedings. *See* 8 Collier on Bankruptcy ¶ 1517.01 (16th ed. 2023) ("Chapter 15 is not listed or mentioned in section 109 because chapter 15 contains a distinct definition of debtor (the subject of the foreign proceeding) who never becomes a debtor under title 11.)").

---

(b) The commencement of a voluntary case under a chapter of this title constitutes an order for relief under such chapter.

22-11024         TJOFLAT, J., Specially Concurring          7

Creditors can also file an "involuntary" bankruptcy petition under 11 U.S.C. § 303. 1 Collier on Bankruptcy ¶ 1.04[2] (16th ed. 2023). An involuntary proceeding can only travel under Chapter 7 or 11. § 303(a). The creditors' "involuntary petition must allege either that a custodian was appointed to take charge of all or substantially all of the debtor's property within the preceding 120 days or that the debtor is not generally paying its debts as they become due." 1 Collier on Bankruptcy ¶ 1.04[2] (16th ed. 2023). Creditors typically allege the latter. *See id.* Creditors—especially secured creditors concerned about, for example, the dissipation of collateral—can benefit from prompt and efficient distribution of the debtor's assets so that they obtain at least some of what they are owed.

At the beginning of a bankruptcy case,[10] whether "a voluntary or involuntary case, the debtor must file a schedule of assets and liabilities, a schedule of current income and expenses, a schedule of executory contracts, a statement of financial affairs and, if the debtor is an individual, a statement of intention as required" under 11 U.S.C. § 521. 1 Collier on Bankruptcy ¶ 1.04[3] (16th ed. 2023). A debtor who is an individual must also submit "copies of all 'payment advices' received from the debtor's employer within 60 days

---

[10] Under Federal Rule of Bankruptcy Procedure 1007, if the petitioner did not file the schedules with the petition, he must file them within 14 days thereafter, except that if the petition is involuntary, the debtor must file the required documents within 14 days of the order for relief. This information is "essential" to providing notice to creditors to submit claims for recovery. *See* 1 Collier on Bankruptcy ¶ 1.04[3] (16th ed. 2023).

of filing, a statement of monthly net income, itemized to show how the amount is calculated and a statement disclosing any reasonably anticipated changes in the debtor's monthly net income during the year" following the petition's filing. *Id.* And under 11 U.S.C. § 109(h), "[i]ndividual debtors must also file with the petition a certificate establishing that the debtor has received a credit counseling briefing within the 180 days preceding the commencement of the case. This certificate is necessary for the individual debtor to establish his or her eligibility to file." 1 Collier on Bankruptcy ¶ 1.04[3] (16th ed. 2023).

We need not cover all the aspects of the Bankruptcy Code, but two main aspects of a full-fledged bankruptcy case under Title 11 are worth mentioning here. One is the automatic stay under 11 U.S.C. § 362. The automatic stay is triggered upon the filing of a bankruptcy petition. § 362. "The automatic stay bars anyone from taking action to recover a debt then owing by the debtor or acting to affect property of the debtor or the estate or in the possession of the estate. It maintains the status quo and prevents dismemberment of the estate by individual action of creditors and others." 1 Collier on Bankruptcy ¶ 1.05[1] (16th ed. 2023). The court can enforce the automatic stay through the contempt power or the imposition of sanctions. *Id.*

The trustee's duties and powers are also important. The trustee in a bankruptcy case "is the representative of the estate," § 323(a), "and as such he owes a fiduciary duty to debtor and creditors alike to act fairly and protect their interests." *In re Whet*, 750

F.2d 149, 149 (1st Cir. 1984). Section 521(a)(3) requires the debtor to "cooperate with the trustee as necessary for the trustee to perform the trustee's duties," which can "include actions necessary to locating and disposing of property of the estate." 4 Collier on Bankruptcy ¶ 521.01 (16th ed. 2023). The trustee can also avoid various kinds of transactions. *See* 1 Collier on Bankruptcy ¶ 1.05[5] (16th ed. 2023). The avoiding power includes the power to help prevent fraudulent transfers. The Bankruptcy Code contains two provisions to that effect. Under § 544(b),[11] the trustee can assert the rights of an unsecured creditor to avoid a pre-bankruptcy transfer under applicable state law on fraudulent transfers. And under § 548,[12] the trustee can avoid a transfer that fits under the

---

[11] Section 544(b) says:

> (1) Except as provided in paragraph (2), the trustee may avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under section 502 of this title [11 U.S.C. § 502] or that is not allowable only under section 502(e) of this title [11 U.S.C. § 502(e)].

> (2) Paragraph (1) shall not apply to a transfer of a charitable contribution (as that term is defined in section 548(d)(3) [11 U.S.C. § 548(d)(3)]) that is not covered under section 548(a)(1)(B) [11 U.S.C. § 548(a)(1)(B)], by reason of section 548(a)(2) [11 U.S.C. § 548(a)(2)]. Any claim by any person to recover a transferred contribution described in the preceding sentence under Federal or State law in a Federal or State court shall be preempted by the commencement of the case.

[12] Collier on Bankruptcy summarizes § 548 as follows:

10                 TJOFLAT, J., Specially Concurring            22-11024

Bankruptcy Code's own definition of fraudulent transfers provided in § 548.

★      ★      ★

The upshot is that a full bankruptcy proceeding involves, early in the case: (1) an initial filing claiming the debtor is eligible for the requested relief, (2) an automatic stay on proceedings related to the debtor's assets, (3) the creation of an estate covering the debtor's assets, (4) the appointment of a trustee to administer and protect the estate, and (5) detailed review of the debtor's assets and obligations. Recognizing a foreign insolvency proceeding occurs in a very different context. By the time a petition for recognition arrives on our shores, the foreign court has already determined the debtor's eligibility under its own law, and the debtor's assets are already under the control of the foreign proceeding. Nor

---

Under section 548, the trustee may avoid a transfer made within two years prior to bankruptcy if there was an actual intent to hinder, delay or defraud creditors. The Code also recognizes presumptive fraudulent transfers. For instance, no specific fraudulent intent is required if the debtor voluntarily or involuntarily received less than a reasonably equivalent value in exchange and (1) was insolvent at the time of the transfer, (2) "was engaged in business or a transaction . . . for which any property remaining with the debtor was an unreasonably small capital" or (3) "intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay[.]"

1 Collier on Bankruptcy ¶ 1.05[5][c] (quoting § 548(a)(1)).

22-11024        TJOFLAT, J., Specially Concurring        11

would there be, for example, § 109(h) credit counseling for a debtor in a foreign proceeding before a Chapter 15 case would commence.

### B.

On May 30, 1997, UNCITRAL adopted the Model Law on Cross-Border Insolvency. UNITED NATIONS COMMISSION ON INTERNATIONAL TRADE LAW, UNCITRAL MODEL LAW ON CROSS-BORDER INSOLVENCY (1997), https://uncitral.un.org/en/texts/insolvency/modellaw /cross-border_insolvency. "The Model Law [was] accompanied by a Guide to Enactment and Interpretation. . . . directed primarily to executive branches of Governments and legislators preparing the necessary enacting legislation, but it also provides useful insight for those charged with interpretation and application of the Model Law, such as judges." *Id.* "That the final negotiations [on the Model Law] included thirty-six UNCITRAL members—including the United States—representatives of forty observer states, and thirteen international organizations evidences its widespread support." *Tacon v. Petroquest Res. Inc. (In re Condor Ins. Ltd.)*, 601 F.3d 319, 322 (5th Cir. 2010) (citing 1997 Enactment Guide at ¶ 8, which is ¶ 16 in the 2013 version). On December 15, 1997, the United Nations General Assembly passed a resolution recommending that member states consider incorporating UNCITRAL's Model Law, and that "all efforts be made to ensure that the Model Law, together with the [UNCITRAL Enactment] Guide, become generally known and available." General Assembly Resolution 52/158 ¶ 3–4. In addition, "UNCITRAL has established a reporting system for case law on UNCITRAL texts (CLOUT)" and composes a digest of international caselaw on interpretation of

the Model Law to help promote uniform interpretation. UNCITRAL, DIGEST OF CASE LAW ON THE UNCITRAL MODEL LAW ON CROSS-BORDER INSOLVENCY, ¶ 9–11 (2021), *available at* https://uncitral.un.org/en/case_law/digests ("UNCITRAL Digest").

The Enactment Guide explains that the UNCITRAL Model Law is designed to help ensure the "rescue of financially troubled businesses" and promote "a fair and efficient administration of cross-border insolvencies." ¶ 5. It also states that "[t]he cross-border cooperation mechanisms established by the Model Law are designed to confront" the "increasing problem" of "[f]raud by insolvent debtors, in particular by concealing assets or transferring them to foreign jurisdictions." *Id.* at ¶ 6.

In 2005, Congress adopted the Model Law in Title VIII of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8, § 801 (2005). Section 1501(a) says:

> (a) The purpose of this chapter [11 USCS §§ 1501 et seq.] is to incorporate the Model Law on Cross-Border Insolvency so as to provide effective mechanisms for dealing with cases of cross-border insolvency with the objectives of—
>
>> (1) cooperation between—
>>
>>> (A) courts of the United States, United States trustees, trustees, examiners, debtors, and debtors in possession; and

(B) the courts and other competent authorities of foreign countries involved in cross-border insolvency cases;

(2) greater legal certainty for trade and investment;

(3) fair and efficient administration of cross-border insolvencies that protects the interests of all creditors, and other interested entities, including the debtor;

(4) protection and maximization of the value of the debtor's assets; and

(5) facilitation of the rescue of financially troubled businesses, thereby protecting investment and preserving employment.

Section 1508, titled "Interpretation," tells us that, "[i]n interpreting this chapter, the court shall consider its international origin, and the need to promote an application of this chapter that is consistent with the application of similar statutes adopted by foreign jurisdictions."

Chapter 15 applies when "assistance is sought in the United States by a foreign court or a foreign representative in connection with a foreign proceeding." § 1501(b)(1). Section 1517 defines when a United States court can recognize a foreign proceeding.[13]

---

[13] Section, 1517, Order granting recognition, provides in full:

(a) Subject to section 1506 [11 U.S.C. § 1506, the public policy exception], after notice and a hearing, an order recognizing a foreign proceeding shall be entered if—

> (1) such foreign proceeding for which recognition is sought is a foreign main proceeding or foreign non-main proceeding within the meaning of section 1502 [11 U.S.C. § 1502];

> (2) the foreign representative applying for recognition is a person or body; and

> (3) the petition meets the requirements of section 1515 [11 U.S.C. § 1515].

(b) Such foreign proceeding shall be recognized—

> (1) as a foreign main proceeding if it is pending in the country where the debtor has the center of its main interests; or

> (2) as a foreign nonmain proceeding if the debtor has an establishment within the meaning of section 1502 [11 U.S.C. § 1502] in the foreign country where the proceeding is pending.

(c) A petition for recognition of a foreign proceeding shall be decided upon at the earliest possible time. Entry of an order recognizing a foreign proceeding constitutes recognition under this chapter [11 U.S.C. §§ 1501 et seq.].

(d) The provisions of this subchapter [11 U.S.C. §§ 1515 et seq.] do not prevent modification or termination of recognition if it is shown that the grounds for granting it were fully or partially lacking or have ceased to exist, but in considering such action the court shall give due weight to possible prejudice to parties that have relied upon the order granting recognition. A case under this chapter [11 U.S.C. §§ 1501 et seq.] may be closed in the manner prescribed under section 350 [11 U.S.C. § 350].

22-11024          TJOFLAT, J., Specially Concurring          15

A representative of the foreign proceeding must file an application that meets the requirements of § 1515,[14] *see* § 1517(a)(3), which include attaching a "certified copy of the decision commencing such foreign proceeding and appointing the foreign representative," a certified document from the foreign court affirming the legitimacy of the proceeding and the representative's authority, or other evidence of the proceeding's legitimacy. *See* § 1515(b). Section 1516(a) also provides that, "[i]f the decision or certificate referred

---

[14] Section 1515 provides:

> (a) A foreign representative applies to the court for recognition of a foreign proceeding in which the foreign representative has been appointed by filing a petition for recognition.
>
> (b) A petition for recognition shall be accompanied by—
>
>> (1) a certified copy of the decision commencing such foreign proceeding and appointing the foreign representative;
>>
>> (2) a certificate from the foreign court affirming the existence of such foreign proceeding and of the appointment of the foreign representative; or
>>
>> (3) in the absence of evidence referred to in paragraphs (1) and (2), any other evidence acceptable to the court of the existence of such foreign proceeding and of the appointment of the foreign representative.
>
> (c) A petition for recognition shall also be accompanied by a statement identifying all foreign proceedings with respect to the debtor that are known to the foreign representative.
>
> (d) The documents referred to in paragraphs (1) and (2) of subsection (b) shall be translated into English. The court may require a translation into English of additional documents.

to in section 1515(b) [11 USCS § 1515(b)] indicates that the foreign proceeding is a foreign proceeding and that the person or body is a foreign representative, the court is entitled to so presume."[15]

A foreign representative must be "a person or body, including a person or body appointed on an interim basis, authorized in a foreign proceeding to administer the reorganization or the liquidation of the debtor's assets or affairs or to act as a representative of such foreign proceeding." § 101(24). Upon recognition, the foreign representative can sue and be sued in the United States for the purposes of the ancillary proceeding and may apply directly to a United States court for appropriate relief. § 1509(b)(1)–(2), § 1510. The foreign representative can then "participate as a party in interest in a case regarding the debtor under" the Bankruptcy Code as well. § 1512.

To recognize the foreign proceeding, the court must find that the "foreign proceeding for which recognition is sought is a foreign main proceeding or foreign nonmain proceeding within the meaning of section 1502." § 1517(a)(1). Section 1502(4) says that "'foreign main proceeding' means a foreign proceeding pending in the country where the debtor has the center of its main interests." Under § 1502(5), "'foreign nonmain proceeding' means a

---

[15] "The term 'foreign representative' means a person or body, including a person or body appointed on an interim basis, authorized in a foreign proceeding to administer the reorganization or the liquidation of the debtor's assets or affairs or to act as a representative of such foreign proceeding." § 101(24).

22-11024          TJOFLAT, J., Specially Concurring          17

foreign proceeding, other than a foreign main proceeding, pending in a country where the debtor has an establishment."

To find the proceeding fits under one of those definitions, the court must find the proceeding meets the definition of a "foreign proceeding." Chapter 1 defines a "foreign proceeding." Under § 101(23):

> The term "foreign proceeding" means a collective judicial or administrative proceeding in a foreign country, including an interim proceeding, under a law relating to insolvency or adjustment of debt in which proceeding the assets and affairs of the debtor are subject to control or supervision by a foreign court, for the purpose of reorganization or liquidation.

Congress adopted this definition of "foreign proceeding" from the Model Law in the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005.[16]

---

[16] Article 2(a) of the Model Law defines "foreign proceeding" as follows:

> "Foreign proceeding" means a collective judicial or administrative proceeding in a foreign State, including an interim proceeding, pursuant to a law relating to insolvency in which proceeding the assets and affairs of the debtor are subject to control or supervision by a foreign court, for the purpose of reorganization or liquidation.

Other than replacing "pursuant to" with "under" and adding "or adjustment of debt" after "a law relating to insolvency," § 101(23) uses the same definition as the Model Law.

Because Congress told us to consider the law's "international origin" in § 1508, and Congress was presumably aware of the UNCITRAL Enactment Guide, we consider the Guide important context. According to the Enactment Guide, the definition of "foreign proceeding" is designed to be broad and promote substance over form. "The definitions of proceedings or persons emanating from foreign jurisdictions avoid the use of expressions that may have different technical meaning in different legal systems and instead describe their purpose or function." Enactment Guide ¶ 65. The definition "avoid[s] inadvertently narrowing the range of possible foreign proceedings that might obtain recognition and . . . unnecessary conflict with terminology used in the laws of the enacting State." *Id.*

The Guide says the definition of "foreign proceeding" contains four elements. They are: (1) a basis in insolvency-related law of the originating State; (2) involvement of creditors collectively; (3) control or supervision of the assets and affairs of the debtor by a court or another official body; and (4) reorganization or liquidation of the debtor as the purpose of the proceeding. *Id.* at ¶ 66. Essentially, the proceeding must involve a legally authorized entity taking control of a debtor's assets and affairs for the purpose of settling the debtor's obligations with his creditors. Moreover, the Enactment Guide makes clear that "the Model Law was formulated to apply to any proceeding that meets the requirements of article 2, subparagraph *(a)* [definition of foreign proceeding], independently of the nature of the debtor or its particular status under national law." ¶ 55.

Congress incorporated the elements discussed in the Enactment Guide into the text of § 101(23). "The phrase 'under a law relating to insolvency or adjustment of debt' emphasizes that chapter 15 is available not only to debtors that are technically insolvent or facing liquidation but also to debtors who are in financial distress and may need to reorganize." 2 Collier on Bankruptcy ¶ 101.23 (16th ed. 2023). Meanwhile, "the 'collective proceeding' requirement excludes from chapter 15 receivership proceedings that are for the benefit of a single creditor." *Id.* Courts applying § 101(23) have interpreted it "broadly." *Id.* (citing *In re Betcorp Ltd.*, 400 B.R. 266 (Bankr. D. Nev. 2009), and *In re Tri-Continental Exchange Ltd.*, 349 B.R. 627 (Bankr. E.D. Cal. 2006), both of which involved winding-up proceedings under the foreign country's corporate law that qualified as collective proceedings and in which courts had at least some control over the corporations' assets and affairs).

As discussed above, Section 1517 provides for recognition of one of two types of foreign proceedings: foreign main proceedings and foreign nonmain proceedings. The distinction—where the debtor has his "center of main interests"—is undefined in Chapter 15. 8 Collier on Bankruptcy ¶ 1502.01[4] (16th ed. 2023). According to the Enactment Guide, the concept of a "center of main interests" comes from a regulation implementing the European Union Convention on Insolvency Proceedings. ¶ 81. That EU Regulation says: "The 'centre of main interests' should correspond to the place where the debtor conducts the administration of his interests on a regular basis and is therefore ascertainable by third parties." Council Regulation (EC) No 1346/2000 of 29 May 2000,

Preamble ¶ 13.  Paragraph 83 of the Enactment Guide quotes this regulation.  Chapter 15 also establishes a presumption that the country where a debtor has its registered office is its center of main interests: "In the absence of evidence to the contrary, the debtor's registered office, or habitual residence in the case of an individual, is presumed to be the center of the debtor's main interests." § 1516(c).

A court can also recognize a proceeding occurring outside the debtor's center of main interests if it meets the § 101(23) definition of a "foreign proceeding" and "if the debtor has an establishment within the meaning of section 1502 [11 USCS § 1502] in the foreign country where the proceeding is pending." § 1517(b).  Under § 1502(2), "'establishment' means any place of operations where the debtor carries out a nontransitory economic activity." Essentially, a nonmain proceeding must occur in a country where the debtor has more than just assets.  *See* 8 Collier on Bankruptcy ¶ 1517.02 ("By omission, a foreign proceeding that is premised only on the presence of assets in the foreign country is not eligible for recognition.").

When a court recognizes a foreign main proceeding, some relief flows automatically under § 1520.[17]  One key form of relief is

---

[17] Section 1520 provides:

(a) Upon recognition of a foreign proceeding that is a foreign main proceeding—

(1) sections 361 and 362 [11 U.S.C. §§ 361 and 362] apply with respect to the debtor and the property of the

22-11024        TJOFLAT, J., Specially Concurring        21

the automatic stay under 11 U.S.C. § 362. *See* § 1520(a)(1). The foreign representative also automatically gets "the rights and powers of a trustee under and to the extent provided by sections 363 and 552." § 1520(a)(3). And the foreign representative gets the right to void post-petition transactions concerning property in the

---

> debtor that is within the territorial jurisdiction of the United States;
>
> (2) sections 363, 549, and 552 [11 U.S.C. §§ 363, 549, and 552] apply to a transfer of an interest of the debtor in property that is within the territorial jurisdiction of the United States to the same extent that the sections would apply to property of an estate;
>
> (3) unless the court orders otherwise, the foreign representative may operate the debtor's business and may exercise the rights and powers of a trustee under and to the extent provided by sections 363 and 552 [11 U.S.C. §§ 363 and 552]; and
>
> (4) section 552 [11 U.S.C. § 552] applies to property of the debtor that is within the territorial jurisdiction of the United States.

(b) Subsection (a) does not affect the right to commence an individual action or proceeding in a foreign country to the extent necessary to preserve a claim against the debtor.

(c) Subsection (a) does not affect the right of a foreign representative or an entity to file a petition commencing a case under this title or the right of any party to file claims or take other proper actions in such a case.

22                    TJOFLAT, J., Specially Concurring                    22-11024

United States, as a trustee can in a full bankruptcy case under § 549.[18] § 1520(a)(2).

Section 1521[19] outlines discretionary relief available to the foreign representative in an ancillary proceeding. Under § 1521(a),

---

[18] Section 549(a) provides:

> (a) Except as provided in subsection (b) or (c) of this section, the trustee may avoid a transfer of property of the estate—
>
> > (1) that occurs after the commencement of the case; and
> >
> > (2)
> >
> > > (A) that is authorized only under section 303(f) or 542(c) of this title [11 U.S.C. § 303(f) or 542(c)]; or
> > >
> > > (B) that is not authorized under this title or by the court.

[19] Section 1521 provides, in full:

> (a) Upon recognition of a foreign proceeding, whether main or nonmain, where necessary to effectuate the purpose of this chapter [11 U.S.C. §§ 1501 et seq.] and to protect the assets of the debtor or the interests of the creditors, the court may, at the request of the foreign representative, grant any appropriate relief, including—
>
> > (1) staying the commencement or continuation of an individual action or proceeding concerning the debtor's assets, rights, obligations or liabilities to the extent they have not been stayed under section 1520(a) [11 U.S.C. § 1520(a)];

(2) staying execution against the debtor's assets to the extent it has not been stayed under section 1520(a) [11 U.S.C. § 1520(a)];

(3) suspending the right to transfer, encumber or otherwise dispose of any assets of the debtor to the extent this right has not been suspended under section 1520(a) [11 U.S.C. § 1520(a)];

(4) providing for the examination of witnesses, the taking of evidence or the delivery of information concerning the debtor's assets, affairs, rights, obligations or liabilities;

(5) entrusting the administration or realization of all or part of the debtor's assets within the territorial jurisdiction of the United States to the foreign representative or another person, including an examiner, authorized by the court;

(6) extending relief granted under section 1519(a) [11 U.S.C. § 1519(a)]; and

(7) granting any additional relief that may be available to a trustee, except for relief available under sections 522, 544, 545, 547, 548, 550, and 724(a) [11 U.S.C. §§ 522, 544, 545, 547, 548, 550, and 724(a)].

(b) Upon recognition of a foreign proceeding, whether main or nonmain, the court may, at the request of the foreign representative, entrust the distribution of all or part of the debtor's assets located in the United States to the foreign representative or another person, including an examiner, authorized by the court, provided that the court is satisfied that the interests of creditors in the United States are sufficiently protected.

(c) In granting relief under this section to a representative of a foreign nonmain proceeding, the court must be satisfied that

24              TJOFLAT, J., Specially Concurring          22-11024

the foreign representative of a nonmain proceeding can request that the court provide any relief that automatically flows from recognition of a main proceeding under § 1521, including a stay on proceedings related to, and transfers and disposals of, the debtor's assets. § 1521(a)(1)–(3). Section 1521(a)(4) enables the foreign representative to take discovery, meaning the court can issue discovery orders enforceable with the contempt power. But § 1521(a)(7) denies the foreign representative the ability to utilize the "avoidance provisions of the Bankruptcy Code (sections 522, 544, 545, 547, 548, 550 and 724(a))." 8 Collier on Bankruptcy ¶ 1521.02 (16th ed. 2023). The court also has the discretion to, at the foreign representative's request, "entrust the distribution of all or part of the debtor's assets located in the United States to the foreign representative or another person, including an examiner, authorized by

_____

the relief relates to assets that, under the law of the United States, should be administered in the foreign nonmain proceeding or concerns information required in that proceeding.

(d) The court may not enjoin a police or regulatory act of a governmental unit, including a criminal action or proceeding, under this section.

(e) The standards, procedures, and limitations applicable to an injunction shall apply to relief under paragraphs (1), (2), (3), and (6) of subsection (a).

(f) The exercise of rights not subject to the stay arising under section 362(a) [11 U.S.C. § 362(a)] pursuant to paragraph (6), (7), (17), or (27) of section 362(b) [11 U.S.C. § 362(b)] or pursuant to section 362(o) [11 U.S.C. § 362(o)] shall not be stayed by any order of a court or administrative agency in any proceeding under this chapter [11 U.S.C. §§ 1501 et seq.].

the court, provided that the court is satisfied that the interests of creditors in the United States are sufficiently protected." § 1521(a)(5).

⋆    ⋆    ⋆

Unlike the procedures that begin a full bankruptcy case under Title 11, the procedures for recognizing and assisting a foreign proceeding do not naturally involve consideration of the debtor's eligibility to commence a full case under § 109(a). *See* Antonin Scalia & Bryan Garner, *Reading Law: The Interpretation of Legal Texts* § 24 at 167 (2012) (discussing how the whole-text canon "calls on the judicial interpreter to consider the entire text, in view of its structure and the physical and logical relation of its many parts"). The focus is on the foreign proceeding's purpose and legitimacy under the foreign law, the foreign debtor's relationship to the country where the proceeding is pending, and the court's authority to grant orders requested by the foreign representative to assist the proceeding. But unlike § 301, which requires a debtor-petitioner to specify the chapter of the Code under which he seeks relief—a reference to the eligibility requirements of § 109—Chapter 15 does not explicitly say that commencement of ancillary proceedings hinges on eligibility requirements in § 109(a). Rather, the foreign representative files for recognition of a foreign proceeding.

In addition, the relief available in ancillary proceedings is designed to assist the foreign proceeding. Such relief permits the foreign representative to preserve property in the United States for distribution via the foreign proceeding and investigate the debtor's

26                TJOFLAT, J., Specially Concurring          22-11024

American affairs.  Discovery is especially important when the foreign representative suspects the debtor has fraudulently transferred assets to another country, a problem UNCITRAL set out to address in the Model Law.

But, in an ancillary proceeding, no new bankruptcy estate is created, and no new, American trustee is appointed to take custody of any American assets the debtor has.  The foreign representative also cannot avail itself of the Bankruptcy Code's avoidance powers.[20]  And the court need not "entrust the distribution of all or part of the debtor's assets located in the United States" to the foreign representative unless it "is satisfied that the interests of creditors in the United States are sufficiently protected."  § 1521(a)(5).

The bottom line: Chapter 15 "focus[es] on eligibility of the foreign proceeding, not of the debtor."  8 Collier on Bankruptcy ¶ 1517.01 (16th ed. 2023).  And "[i]n a chapter 15 case, the debtor in the foreign proceeding is not a debtor under title 11." *Id.* Requiring a court to consider whether a legitimate insolvency proceeding that otherwise meets the definition of a foreign proceeding under § 101(23) has, as its subject matter, the assets and affairs of a debtor who could also file a United States bankruptcy petition puts a square peg in a round hole.  Common sense tells us Congress would not do that in an off-handed manner.

---

[20] The Fifth Circuit has held the foreign representative can exercise the avoidance powers available under the foreign law in the United States under § 1521. *Tacon v. Petroquest Res. Inc. (In re Condor Ins. Ltd.)*, 601 F.3d 319 (5th Cir. 2010).

According to the Majority opinion, Congress did so explicitly. It points out that § 103(a)[21] makes Chapter One applicable to cases under Chapter 15, and that § 109 is in Chapter One. But the statute's structure and function indicate the debtor subject to the foreign proceeding does not become a debtor under the American Bankruptcy Code. He remains a debtor subject to the foreign proceeding, which the American court helps administer in an ancillary proceeding. That means the foreign debtor need not be eligible to become an American bankruptcy debtor for the court to recognize the foreign proceeding. So, there is no inherent connection between debtor-eligibility under § 109 and recognizing a foreign proceeding.

The use of the word "debtor" in the definition of a foreign proceeding in § 101(23), which requires that such proceeding is "under a law relating to insolvency or adjustment of debt in which proceeding the assets and affairs of the debtor are subject to control or supervision by a foreign court," might be read to create a connection between § 109(a) debtor eligibility and recognition of

---

[21] Section 103(a) says:

> (a) Except as provided in section 1161 of this title [11 U.S.C. § 1161], chapters 1, 3, and 5 of this title [11 U.S.C. §§ 101 et seq., 301 et seq., and 501 et seq.] apply in a case under chapter 7, 11, 12, or 13 of this title [11 U.S.C. §§ 701 et seq., 1101 et seq., 1201 et seq., or 1301 et seq.], and this chapter, sections 307, 362(o), 555 through 557, and 559 through 562 [11 U.S.C. §§ 101 et seq., 307, 362(o), 555–557, and 559–562] apply in a case under chapter 15 [11 U.S.C. §§ 1501 et seq.].

foreign proceedings. Section 1517(b) also refers to "the country where the debtor has the center of its main interests" in describing a foreign main proceeding, and where "the debtor has an establishment" to describe a nonmain proceeding.

Do these uses of the word "debtor" import § 109(a)'s eligibility requirements? True, we should ordinarily presume that "[a] word or phrase . . . bear[s] the same meaning throughout a text." Antonin Scalia & Bryan Garner, *Reading Law: The Interpretation of Legal Texts* § 25 at 170 (2012). But "this canon is particularly defeasible by context." *Id.* at 171.

In *In re Goerg*, we considered a nearly identical question under the then-applicable Bankruptcy Code. And we held that, in the context of a broad definition of "foreign proceeding" designed to allow American courts to assist an expansive set of foreign insolvency proceedings, that definition's reference to "the debtor" referred merely to the entity "properly subject, under applicable foreign law," to the foreign proceeding. *In re Goerg*, 844 F.2d at 1568.

## II.

## A.

In *In re Goerg*, we considered whether a United States court could recognize and assist a West German bankruptcy proceeding. The debtor in the proceeding was a West German decedent's estate. Under West German law, and as in many other countries, a bankruptcy proceeding could be brought with respect to an insolvent decedent's estate. *In re Goerg*, 844 F.2d 1562, 1563 n.1 (11th Cir. 1988). After the decedent's death, separate probate proceedings

22-11024          TJOFLAT, J., Specially Concurring          29

began in West Germany and in Fulton County, Georgia. The West German administrator petitioned the local court in Cologne to commence bankruptcy proceedings upon finding the estate was insolvent, and the court appointed Klaus Hubert Goerg to serve as bankruptcy trustee. *Id.* at 1563. Part of his task was to take custody of the decedent's foreign assets. *Id.* He petitioned the United States Bankruptcy Court for the Northern District of Georgia under 11 U.S.C. § 304 (1982),[22] seeking to enjoin the Fulton County

---

[22] When we decided *In re Goerg,* section 304 provided:

(a) A case ancillary to a foreign proceeding is commenced by the filing with the bankruptcy court of a petition under this section by a foreign representative.

(b) Subject to the provisions of subsection (c) of this section, if a party in interest does not timely controvert the petition, or after trial, the court may—

(1) enjoin the commencement or continuation of—

(A) any action against—

(i) a debtor with respect to property involved in such foreign proceeding; or

(ii) such property; or

(B) the enforcement of any judgment against the debtor with respect to such property, or any act or the commencement or continuation of any judicial proceeding to create or enforce a lien against the property of such estate;

30                 TJOFLAT, J., Specially Concurring                 22-11024

probate proceeding and take custody of the decedent's property "for distribution in the West German bankruptcy proceeding." *Id.* at 1563–64.

The issue was whether the proceeding fit under the then-applicable definition of a foreign proceeding, which provided:

---

(2) order turnover of the property of such estate, or the proceeds of such property, to such foreign representative; or

(3) order other appropriate relief.

(c) In determining whether to grant relief under subsection (b) of this section, the court shall be guided by what will best assure an economical and expeditious administration of such estate, consistent with—

(1) just treatment of all holders of claims against or interests in such estate;

(2) protection of claim holders in the United States against prejudice and inconvenience in the processing of claims in such foreign proceeding;

(3) prevention of preferential or fraudulent dispositions of property of such estate;

(4) distribution of proceeds of such estate substantially in accordance with the order prescribed by this title;

(5) comity; and

(6) if appropriate, the provision of an opportunity for a fresh start for the individual that such foreign proceeding concerns.

11 U.S.C. § 304 (1982).

> "[F]oreign proceeding" means proceeding, whether judicial or administrative and whether or not under bankruptcy law, in a foreign country in which the debtor's domicile, residence, principal place of business, or principal assets were located at the commencement of such proceeding, for the purpose of liquidating an estate, adjusting debts by composition, extension, or discharge, or effecting a reorganization.

*Id.* at 1565 (quoting 11 U.S.C. § 101(22) (1982)). The bankruptcy court and the district court found that, because the definition of a "foreign proceeding" included the word "debtor," a United States bankruptcy court could not recognize a foreign proceeding unless the debtor subject to that proceeding would qualify as a "debtor" for an American bankruptcy proceeding. *In re Goerg*, 844 F.2d at 1564. Because a "debtor" under the United States Bankruptcy Code must be a "person"—which then, as now, did not include estates (which are entities but not persons as defined in Chapter 1), the lower courts found they could not assist the proceeding. *See id.* at 1564–66.

We reversed. Because the definition of foreign proceeding "expressly provide[d] that the foreign proceeding need not even be a bankruptcy proceeding, either under foreign or United States law," it would have been an "anomaly" to refuse to recognize the proceeding because the debtor in the West German proceeding was ineligible to commence a United States bankruptcy proceeding. *Id.* at 1566–67. We also noted that the definition of foreign proceeding included proceedings "for the purpose of liquidating an

estate," which could be read to cover decedents' estates.[23]  *Id.*  So, the definition of foreign proceeding was both broad and ambiguous as to whether it covered the West German proceeding at issue. *Id.*

We then reasoned that, given the purpose of the statute to "help further the efficiency of foreign insolvency proceedings involving worldwide assets," and "in light of the comity concerns that induced Congress to enact" the ancillary proceedings statute, "it would make eminent sense for Congress to define expansively the class of foreign insolvency proceedings for which ancillary assistance is available." *Id.* at 1568.  Put another way, in the context of defining a "foreign proceeding," the word "debtor" referred to the entity that was already the subject of a foreign insolvency proceeding and did not limit the statute's broad definition of a foreign proceeding under 11 U.S.C. § 101(22) (1982).

We derived the statute's purpose by outlining how an ancillary proceeding worked under section 304.  We explained: "The filing of a section 304 petition does not commence a full bankruptcy case; a section 304 case is an ancillary case in which a United States

---

[23] We explained that the word "estate" as used in the definition of foreign proceeding might have referred to bankruptcy estates like those created under § 541, which would not necessarily include decedents' estates, or to decedents' estates.  *Id.* at 1567 n.11; *see also* 2 Collier on Bankruptcy ¶ 304.01, at 304–12 (15th ed. 1987) ("That a foreign administration of a decedent's estate is . . . a 'foreign proceeding' is suggested by the expansive language of [section 101(22)] which includes within its scope proceedings under laws other than bankruptcy laws brought for the purpose of liquidating an estate.").

22-11024          TJOFLAT, J., Specially Concurring          33

bankruptcy court is authorized to apply its processes to give effect to orders entered in a foreign insolvency proceeding." *Id.* at 1567. An ancillary proceeding's "focus" under section 304 was "on making United States processes available in aid of foreign proceedings, not actual bankruptcy administration." *Id.* at 1568. Whether the foreign debtor would be eligible to commence a bankruptcy proceeding in the United States would be irrelevant to this focus. By the time a petition from a foreign representative arrived, the foreign court would have already decided the debtor's eligibility under its own insolvency law, and a trustee or similar entity would have taken custody of the debtor's assets and affairs. And if granting relief were inappropriate, the American court retained discretion not to grant ancillary relief. *See id.* at 1568 ("[T]he section 304 debtor may ultimately receive no relief at all; it is within the discretion of the bankruptcy court, guided by the factors enumerated in section 304(c), to determine what relief, if any, is appropriate."). That meant the foreign debtor did not necessarily have the benefit of the automatic stay applicable in full American bankruptcy proceedings. *See id.*

So, we concluded "it would make little sense to require that the subject of the foreign proceeding qualify as a 'debtor' under United States bankruptcy law." *Id.* at 1568. The point of the statute was to authorize American courts to recognize and assist foreign proceedings involving insolvencies in the various forms in which they might arrive. In light of this purpose, the reference to "the debtor" in describing the debtor's relationship to the country where the foreign proceeding commenced—"a foreign country in which

the debtor's domicile, residence, principal place of business, or principal assets were located at the commencement of such proceeding"—did not import the debtor eligibility requirements for commencing a full bankruptcy proceeding. *See* Antonin Scalia & Bryan Garner, *Reading Law: The Interpretation of Legal Texts* 20 (2012) ("The evident purpose of what a text seeks to achieve is an essential element of context that gives meaning to words.").

**B.**

The reasoning we provided for our holding in *In re Goerg* answers the question presented here. While the current definition of "foreign proceeding" in § 101(23) is not identical to the definition applicable in *In re Goerg*, it contains the same material aspects we relied on in interpreting "foreign proceeding" under 11 U.S.C. § 101(22) (1982).

The current definition of a "foreign proceeding" broadly encompasses "collective judicial or administrative proceeding[s]" which are "under a law relating to insolvency or adjustment of debt" and "for the purpose of reorganization or liquidation," as long as "the assets and affairs of the debtor are subject to control or supervision by a foreign court." While it does not explicitly say the proceeding need not be under bankruptcy law, as § 304 did, the use of the phrases "under a law relating to insolvency or adjustment of debt" and "for the purpose of reorganization or liquidation" convey the same point that the substance and purpose of the proceeding, not its label, control. *See* Enactment Guide ¶ 65 ("The definitions of proceedings or persons emanating from foreign

jurisdictions avoid the use of expressions that may have different technical meaning in different legal systems and instead describe their purpose or function."). The "anomaly" we identified in *In re Goerg* was that construing "foreign proceeding" to require a debtor that could qualify as an American bankruptcy debtor would make no sense given the foreign proceeding did not even need to be under the foreign country's bankruptcy law, as long as it was "for the purpose of liquidating an estate, adjusting debts by composition, extension, or discharge, or effecting a reorganization." 11 U.S.C. § 101(22) (1982). The current definition of a "foreign proceeding" broadly covers non-bankruptcy proceedings for the same purposes.

There are some differences between the old definition of "foreign proceeding" and the current version, but they are not material to the issue here. The old definition was not limited to "collective" proceedings, though it was limited to "judicial or administrative" proceedings, as the current definition is. The old definition did not specify that "the assets and affairs of the debtor [must be] subject to control or supervision by a foreign court." § 101(23). There was also no explicit divide between foreign "main" and "nonmain" proceedings as contemplated in § 1517. The old definition did require that the proceeding occur "in a foreign country in which the debtor's domicile, residence, principal place of business, or principal assets were located at the commencement of such proceeding," which is similar to the requirement that a "main proceeding" occur in the debtor's "center of its main interests." § 1517(b)(1); *see* § 1516(c) ("In the absence of evidence to the contrary, the debtor's registered office, or habitual residence in the case

of an individual, is presumed to be the center of the debtor's main interests."). Section 1517 also contemplates recognizing foreign proceedings pending where the debtor only has an "establishment." § 1517(b)(2).

These differences may have some impact on the scope of proceedings a United States court will recognize under Chapter 15. But they do not impact the issue here: whether, in the context of describing "a [foreign] law relating to insolvency or adjustment of debt in which proceeding the assets and affairs of the debtor are subject to control or supervision by a foreign court," reference to "the debtor" imposes § 109(a)'s eligibility requirements. We face the same "anomaly" here as we faced in *In re Goerg*, and we should resolve it the same way. *See Generali v. D'Amico*, 766 F.2d 485, 489 (11th Cir. 1985) ("This Court is bound by the case law of the Eleventh Circuit.").

Nor do any differences between the procedures and relief under section 304 and Chapter 15 change that analysis. For one thing, the purpose and function of ancillary proceedings are similar. Just as an ancillary proceeding's "focus" under section 304 was "on making United States processes available in aid of foreign proceedings, not actual bankruptcy administration," *In re Goerg*, 844 F.2d at 1568, the focus of Chapter 15 is on recognizing and assisting foreign insolvency proceedings. *See* 8 Collier on Bankruptcy ¶ 1517.01 (16th ed. 2023). And "[i]n a chapter 15 case, the debtor in the foreign proceeding" does not become "a debtor under title 11." *Id.*

As to differences, some relief, including the automatic stay under § 362, flows automatically upon recognition of a foreign main proceeding.  § 1520(a).  That was not so under section 304's discretionary regime.  But nonmain proceedings do not necessarily benefit from the stay, and regardless, various key aspects of a full proceeding—like the trustee's assumption of avoidance powers and immediate custody of the bankruptcy estate—are not part of an ancillary proceeding.

## C.

If anything, the current statutory provisions related to ancillary proceedings should cause us to double down on the reasoning we applied in *In re Goerg*.  Chapter 15 provides its own definition of a "debtor" that controls references to "the debtor" in Chapter 15.  Section 1502(a) says: "For the purposes of this chapter, the term . . . 'debtor' means an entity that is the subject of a foreign proceeding."  That definition aligns with our interpretation of "debtor" in *In re Goerg*.

This definition is not reconcilable with § 109's definition of "who may be a debtor" under Title 11.  *See* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* § 28 at 183 (2012) ("If there is a conflict between a general provision and a specific provision, the specific provision prevails.").  Section 109 says "only a *person* . . . may be a debtor under this title," while § 1502(1) defines "debtor" as "an *entity* that is the subject of a foreign proceeding." (emphases added).  As we discussed in *In re Goerg,* an entity—like a decedent's estate—is not necessarily a "person" under

Chapter 1.  Chapter 1 provides: "The term 'entity' includes person, estate, trust, governmental unit, and United States trustee."  On the other hand, "[t]he term 'person' includes individual, partnership, and corporation, but does not include governmental unit, except . . . ."  11 U.S.C. § 101(41).  *See also* 1 Collier on Bankruptcy ¶ 1.01[2][a] ("A 'person' may be eligible for relief under the Code by virtue of section 109, but one who is an 'entity' and not a 'person' would not be eligible.").

True, statutory provisions presumably "bear the same meaning throughout a text," and "[t]he provisions of a text should be interpreted in a way that renders them compatible, not contradictory."  Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* §§ 25, 27, at 170, 180 (2012).  But "a material variation in terms suggests a variation in meaning."  *Id.* § 25 at 170.  Congress chose to use the word "entity" in defining a "'debtor' . . . that is the subject of a foreign proceeding" in § 1502(1).  "'Entity' is the broadest of all definitions that relate to bodies or units" in the Bankruptcy Code.  2 Collier on Bankruptcy ¶ 101.15 (16th ed. 2023).  And so, the definition of "debtor" for the purposes of Chapter 15 confirms that, when Chapter 15 refers to a "debtor" subject to a foreign proceeding, it means whatever "entity" is the subject of that proceeding, independently of the nature of the debtor and whether such debtor could be a debtor eligible to commence a U.S. bankruptcy case.

Consideration of the "international origins" of Chapter 15 pursuant to § 1508 also supports following *In re Goerg*.  The Guide

22-11024          TJOFLAT, J., Specially Concurring                39

to Enactment of the Model Law says: "the Model Law was formulated to apply to any proceeding that meets the requirements of article 2, subparagraph *(a)* [definition of foreign proceeding], *independently of the nature of the debtor or its particular status under national law*." Enactment Guide ¶ 55 (emphasis added). The Enactment Guide also tells us exclusions from "foreign proceeding" should be clear. It states:

> Article 17 provides that, subject to article 6 [adopted in § 1506, Public Policy Exception], when the specified requirements of article 2 [adopted as § 101(23)] concerning the nature of the foreign proceeding (i.e. that the foreign proceeding is, as a matter of course, a collective proceeding for the purposes of liquidation or reorganization under the control or supervision of the court) and the foreign representative are met and the evidence required by article 15 [adopted as § 1515] has been provided, the court should recognize the foreign proceeding *without further requirement*.

Enactment Guide ¶ 29 (emphasis added). And the Guide goes on to say, "with a view to making the national insolvency law more transparent (for the benefit of foreign users of a law based on the Model Law), it is advisable that exclusions from the scope of the law be expressly mentioned."[24] *Id.* at ¶ 60.

---

[24] Section 1501 expressly excludes from the application of Chapter 15, *inter alia*, "a proceeding concerning an entity, other than a foreign insurance company, identified by exclusion in section 109(b) [11 U.S.C. § 109(b)]."

The UNCITRAL's Digest on case law under the Model Law helps confirm our conclusion. The Digest states, in commenting on *In re Barnet*, 737 F.3d 238 (2d Cir. 2013), which held that § 109(a) eligibility is required in recognizing a foreign proceeding:

> The [Model Law] does not define the term "debtor" as it is not an element of the recognition regime; the [Model Law] provides only for recognition of the foreign proceeding at the request of the foreign representative. Nevertheless, there have been cases in which the court has considered whether or not the entity subject to the foreign proceeding is a debtor for the purposes of the law to be applied by the receiving court.

UNCITRAL Digest ¶ 43 (discussing "Use of the term 'debtor'" in interpreting the definition of a foreign proceeding). The Digest does not mention other international cases reaching the same conclusion as the Second Circuit, and the appellant does not cite any such cases here.[25]

---

§ 1501(c)(1). Section 109(b)'s exclusion applies to, *inter alia*, "a domestic insurance company, bank, savings bank, cooperative bank, savings and loan association, building and loan association, homestead association . . . ." § 109(b)(2). That exclusion tracks the Model Law's suggestion to exclude "types of entities, such as banks or insurance companies, that are subject to a special insolvency regime" from application of the Model Law. Model Law, Art. I(2). The Enactment Guide also explains, "Banks or insurance companies are mentioned as examples of entities that the enacting State might decide to exclude from the scope of the Model Law." ¶ 56.

[25] The Digest does mention how, in a British case:

22-11024          TJOFLAT, J., Specially Concurring          41

And so, the reasonable reading of the word "debtor" in the definition of "foreign proceeding" is that it refers to whatever entity is the subject of the foreign insolvency proceeding.

## D.

The course of proceedings below illustrate the problem with adopting Appellant's position: it would reward fraudulent transfers of a foreign debtor's assets in the United States because once the debtor sells his American property, the foreign proceeding cannot be recognized. The ancillary case began when, on March 24, 2021, Colin Diss, the representative of a United Kingdom bankruptcy proceeding, filed a petition under Chapter 15 for recognition of the U.K. proceeding as a main proceeding.[26] He also filed a motion for an order granting recognition. He requested the automatic relief available under § 1520 and the discretionary relief available under § 1521.

---

the court said that as to whether the company was a debtor, no separate attention had been given to that requirement in other cases and the expression ["debtor"] was not defined in the [Model Law]. Each of the courts whose decisions on recognition applications were considered had, the court said, apparently been content to work on the basis that an entity subject to a foreign proceeding was, for that reason alone, within the relevant "debtor" concept.

Digest at ¶ 44 (citing *Rubin v. Eurofinance SA* [2009] EWHC 2129 (Ch) ¶ 39, *affirmed by* [2012] UKSC 46).

[26] The petition used Official Form 401, as required. 9 Collier on Bankruptcy ¶ 1002.02[7] (16th ed. 2023).

Diss attached a declaration supporting the motion for recognition. In it, he said he was a "joint trustee in bankruptcy and foreign representative of Talal Qais Al Zawawi." The declaration explained that Al Zawawi moved to London with his then-wife in 2015, but she petitioned for divorce in 2017. The U.K. court entered a judgment in the divorce ordering him to pay his ex-wife £24,075,000. The U.K. court then issued a "Worldwide Freezing Order" against Al Zawawi on April 2, 2019, enjoining him "from disposing of, dealing with, or diminishing the value of his assets until the Judgment was paid in full."

When Al Zawawi failed to pay the divorce judgment, his ex-wife filed an involuntary petition for his bankruptcy on March 19, 2020. The U.K. bankruptcy court adjudged him bankrupt on June 29, 2020. The court also appointed Diss and two others as joint trustees on July 15, 2020. Diss included certified copies of the U.K. orders finding Al Zawawi bankrupt and appointing the joint trustees with the Chapter 15 petition.

Diss further declared that:

Upon information and belief, the Debtor has his principal assets in the Middle District of Florida, including an ownership interest [in] the following companies: (i) Qapa Investing Company U.S.A., Inc.; (ii) Qapa Holdings, Inc.; (iii) Hawthorne Village at Port Orange, Inc.; (iv) Hawthorne Groves Apartments, Inc.; and (v) Texas Q Zone, Inc.

Diss also claimed that he was seeking recognition to recover Al Zawawi's assets and investigate whether his funds were used to

22-11024          TJOFLAT, J., Specially Concurring          43

acquire other assets.  Diss then successfully moved the Bankruptcy Court for provisional relief under 11 U.S.C. § 1519 to enjoin anyone from selling, encumbering, or disposing of Al Zawawi's American assets, and authorizing him to take discovery under Rule 2004 of the Federal Rules of Bankruptcy Procedure.

In an objection opposing recognition, Al Zawawi argued that, because he did not fit under § 109(a)'s eligibility requirement, the petition needed to be dismissed.  He claimed he had no personal knowledge that he had any assets in the United States, and that Diss's declaration did not provide factual support that he did.

Diss filed an amended declaration on April 20, 2021.  He added declarations stating that Al Zawawi "holds an interest in the Companies, indirectly, through a Curaçao company called Qapa Investing Corporation N.V., which in turn ostensibly owns some or all of the Companies" referenced in the first declaration.  He

44                TJOFLAT, J., Specially Concurring                22-11024

attached an organizational chart[27] mapping out his ownership in-
terests in the Florida companies.  QAPA Holdings, a Florida corpo-
ration, owns QAPA Investing Company USA, Hawthorne Groves
Apartments, and Hawthorne Village; QAPA Investing Corporation
NV, a Curaçao corporation in which he owns an 18.18% share,
owns QAPA Holdings.  His family members own the rest of the
Curaçao holding company.

    The amended declaration also raised the possibility that Al
Zawawi fraudulently transferred his interest in Texas Q Zone,
which Diss had alleged Al Zawawi owned in the first declaration.
Diss declared that, on or about February 24, 2020—less than a
month before his ex-wife filed an involuntary bankruptcy peti-
tion—Al Zawawi sold "600 shares (the totality of [his] shareholding

---

27

| Name of Shareholder | Number of Shares | Percentage |
|---|---|---|
| Alawi Zawawi | 24 | 18.18 |
| Talal Zawawi | 24 | 18.18 |
| Abdulmunim Zawawi | 24 | 18.18 |
| Azzan Zawawi | 24 | 18.18 |
| Siham Zawawi | 12 | 9.09 |
| Lubna Zawawi | 12 | 9.09 |
| Bushra Zawawi | 12 | 9.09 |
| TOTAL | 132 | 100.00 |

QAPA INVESTING CORPORATION NV
(Incorporated in Curacao)

QAPA HOLDINGS, INC.
(a Florida Corporation)

| QAPA Investing Company USA, Inc. (a Florida Corporation) | Hawthorne Groves Apartments, Inc. (A Florida Corporation) | Hawthorne Village at Port Orange, Inc. (A Florida Corporation) |

22-11024          Tjoflat, J., Specially Concurring          45

interest) in Texas Q Zone, Inc. to his brother, Azzan Qais Abdul Munem Al Zawawi, for US$1,582,901." According to Diss, this sale violated the freezing order entered in April 2019.

In a brief supporting recognition filed on April 20, 2021, Diss argued that the Bankruptcy Court should not follow *In re Barnet*, and that regardless, Al Zawawi had American assets. Those assets consisted of his beneficial ownership in the Florida companies, along with (1) a retainer Sequor Law—the Foreign representatives' lawyers' firm—"holds . . . in its trust account for the benefit of the Debtor's estate," and (2) Al Zawawi's jacket and wallet. Diss obtained Al Zawawi's jacket and wallet and brought them to Sequor's Miami office, according to the brief, "for keeping on behalf of and for the benefit of the Debtor." Diss had declared that he did this in the amended declaration.

Diss attached to the memorandum documents he had obtained purporting to verify Al Zawawi's sale of his shares in Texas Q Zone. These included: a copy of the stock purchase agreement, dated February 24, 2020; a bank record showing Al Zawawi's receipt of the funds for the Texas Q Zone shares from his brother; and a copy of a "high importance" email dated April 8, 2021, from the financial comptroller of the "Zawawi Group"[28] to Alex MacKinnon, CEO of Texas Q Zone, stating that Al Zawawi had sold his

---

[28] The Zawawi Group is a consulting group based in Oman that was founded in 1975 by Abdulmunim Al Zawawi, an Omani politician. ZAWAWI GROUP, *About Us*, https://www.zawawigroup.com/about/.

60% share in Texas Q Zone to his brother in February 2020. The email said that COVID-19 disruptions prevented prompter notice.

When this transfer actually occurred was crucial, especially if § 109(a) limited recognition. At a hearing on the motion for recognition in front of the Bankruptcy Court on April 22, 2021, Diss's counsel explained that the trustees only learned of Al Zawawi's transfer of his interests in Texas Q Zone after documents were produced under subpoenas issued pursuant to the Bankruptcy Court's § 1519 relief order. Alex Mackinnon, Texas Q Zone's CEO, testified in a deposition taken the day before the hearing that he also first learned about the transfer of Al Zawawi's interest on April 6, 2021, after the subpoenas were served. The corporate records of the company therefore still said Al Zawawi held 60% of the shares in the company. Diss's counsel characterized the documents reflecting the sale as occurring in February 2020 as "self-serving." Counsel also explained that "under English law this transfer would definitely be a transfer that would be viewable and potentially avoidable depending on additional information reflecting the value or the lack thereof of the alleged consideration, but most importantly is the timing."

Al Zawawi argued, however, that as of the date of the Chapter 15 petition, he "had no interest whatsoever in Texas Q Zone." He also argued the interests in the Curaçao holding company that owned the Florida companies and the retainer should not qualify

22-11024          Tjoflat, J., Specially Concurring          47

as property under § 109(a).[29]  Accordingly, Al Zawawi had disposed of his only assets in the United States, and thus did not qualify as a debtor under § 109(a).  That meant the petition needed to be dismissed, ending Diss's investigation.  Al Zawawi reiterated the same argument on appeal.

Common sense tells us this result almost certainly cannot be correct.  The Model Law that Congress adopted had, as one of its primary purposes, preventing bankruptcy debtors from fraudulently transferring and hiding assets.  *See also* § 1501(a)(3) (Chapter 15 has as a purpose promoting "fair and efficient administration of cross-border insolvencies that protects the interests of all creditors").  Yet Appellant's argument is that, if a United States Bankruptcy Court finds a potentially fraudulent transfer of all a foreign debtor's American assets was successfully executed, the Chapter 15 case is over because the debtor would be ineligible to then file for bankruptcy in the United States.  Congress *could* write such a self-defeating statute.  But in my view, it did not do so.

---

[29] As to Al Zawawi's wallet and jacket, his lawyer said he had not heard of Diss's lawyer's possession of them until ten minutes before the hearing and accused Diss's counsel of "planting evidence . . . a police tactic of the 1980's." The lawyer for Diss responded by reminding the Bankruptcy Court that Diss mentioned the personal property in paragraph 28 of the amended declaration.